[No. 36350-0-II.   Division Two.   June 7, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. KRISTINA RANAE GRIER, *Appellant*.

*Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Thomas C. Roberts, Deputy*, for respondent.

¶1 HUNT, J. — On remand from our Supreme Court, Kristina Ranae Grier appeals her second degree murder conviction and her community custody sentencing conditions requiring her to undergo mental health and drug abuse treatments. She argues that we should reverse her conviction because (1) the trial court failed to conduct a competency hearing despite having reason to doubt her competency; (2) the State committed prosecutorial misconduct by eliciting testimony that violated a pretrial order to exclude evidence of Grier's drug use and drug paraphernalia found her in house; (3) the trial court erred by admitting

irrelevant, prejudicial, or inadmissible ER 404(b) evidence; (4) Grier's trial counsel was ineffective for failing to object to this inadmissible evidence and, in the alternative, for failing to request limiting instructions related to this evidence; and (5) cumulative error warrants the reversal of her conviction. In her Statement of Additional Grounds,[1] Grier asserts that the State clandestinely prohibited her son Nathan from testifying about the victim's drug use and drug dealing. She also argues that we should strike the mental health and substance abuse treatment conditions of her sentence because the trial court failed to make statutorily required findings supporting these conditions.

¶2 We affirm Grier's conviction, vacate the mental health and substance abuse treatment conditions of her community custody, and remand to the trial court to strike these two conditions from her sentence or to conduct appropriate hearings and then to enter the relevant statutorily required findings to support such treatment conditions.

## FACTS

¶3 We incorporate here the facts in our 2009 opinion, in which we held that defense counsel's withdrawing his request for lesser-included-offense instructions constituted ineffective assistance and reversed Grier's conviction for murdering Gregory Owen during an evening confrontation; accordingly, we did not address Grier's remaining claims. *State v. Grier*, 150 Wn. App. 619, 632-33, 208 P.3d 1221 (2009). The Washington Supreme Court reversed our decision and remanded to us for "adjudication of Grier's remaining claims." *State v. Grier*, 171 Wn.2d 17, 45, 246 P.3d 1260 (2011). We now address those claims and supplement our 2009 opinion's facts with the following facts:

---

[1] RAP 10.10.

I. Pretrial Proceedings

A. Competency Evaluation

¶4 At a June 26, 2006 pretrial hearing, the State asked the superior court[2] to continue the trial and to "send [Grier] out to Western State [Hospital] for a . . . 15-day evaluation." Verbatim Report of Proceeding (VRP) (June 26, 2006) at 3. The State explained:

> The State has reason to believe there's possible insanity.[3] [Grier] wrote a couple of letters to the court right after she was incarcerated. Those are in the court file. The primary thrust of those letters was that she [Grier] wanted her guns returned.

VRP (June 26, 2006) at 3. Grier's counsel agreed:

> [The State] informed me and discussed with me this possibility. And I have had discussions with [Grier] in trying to prepare for her defense and must admit that *those discussions . . . don't usually . . . lead to a conclusion where I'm satisfied that she is assisting me in the preparation of her defense.*
>
> [The State] is requesting that [Grier] be evaluated at Western State Hospital. That *seems to be a prudent idea,* because whether she [Grier] comes back as having a mental deficiency or coming back completely competent, both of those *would be beneficial as far as I'm concerned in my representation of her to know whether what we're doing is appropriate or not.*

VRP (June 26, 2006) at 4 (emphasis added).

¶5 The superior court responded, "What I'm hearing is both sides agree that a competency evaluation is prudent. Is that correct?" VRP (June 26, 2006) at 5. The State an-

---

[2] We use the term "superior court" to differentiate between the two courts that issued and addressed the June 26, 2006 competency evaluation order and the third court, which vacated the competency evaluation order.

[3] Although the State said "insanity," it appears that the State meant "incompetency."

swered, "The State believes it's prudent at this point, your Honor. I see a built-in appeal issue if we don't do it." VRP (June 26, 2006) at 5. Defense counsel did not respond. Granting the State's request, on June 26, 2006, the superior court issued an "Order for Examination by Western State Hospital" containing preprinted language that stated, "[T]here may be reason to doubt the defendant's [Grier's] fitness to proceed," and ordered the examination report to include "opinion[s]" about Grier's "competency," "sanity," and "mental state."[4] Clerk's Papers (CP) at 188, 190. The superior court and the State both signed the order; defense counsel and Grier signed the order, under the heading "Approved as to Form." CP at 191. The superior court scheduled the next hearing for July 13, 2006.

¶6 On July 18, a different superior court judge held a hearing, during which defense counsel advised that he "had requested to be taken off this case." VRP (July 18, 2006) at 2. The State informed the superior court that Grier had not yet received an examination at Western State Hospital. One week later, on July 25, Grier's first counsel withdrew and Grier obtained different counsel.

¶7 That same day, July 25, Grier's new counsel presented to a third superior court judge an order vacating the first superior court judge's June 26, 2006 that Grier undergo an examination at Western State Hospital. Without written or oral explanation on the record before us, the third judge vacated the June 26, 2006 order. Grier's former counsel signed the order, and the State signed it, "[A]s To Form"; Grier's signature is not on it. The record before us contains no objection by Grier to the trial court's vacating the competency examination.

_____

[4] This June 26, 2006 order defined (1) "competency" as "an opinion as to [Grier's] capacity to understand the proceedings and to assist in [Grier's] own defense"; (2) "sanity" as "an opinion as to the extent [that], at the time of the offense [and] as a result of mental disease or defect, [Grier] was unable to either perceive the nature and quality of the acts with which [Grier] is charged, or to know right from wrong with reference to those acts"; and (3) "mental state" as "the capacity of [Grier] to have the particular mental state of mind [namely, intent,] which is an element of [second degree murder]." Clerk's Papers at 190.

¶8 Neither before nor when trial began did Grier ask for a competency hearing, raise any issues concerning her fitness for trial, or object to the lack of a competency evaluation or other examination at Western State Hospital. The record before us includes no facts suggesting any need for a competency hearing at that time.

### B. Pretrial Evidentiary Rulings

¶9 During a pretrial hearing, Grier informed the trial court that "there was mention made by [her son, Nathan Grier, and his girl friend, Cynthia Michaels, in their statements] about . . . some threats and/or waving around of a gun by Ms. Grier to Nathan." 1 Report of Proceedings (RP) at 94. Grier argued that the trial court should exclude "any reference to any previous alleged threats . . . , to include any waving around of any guns," because such evidence was irrelevant and inadmissible "conformity" evidence under ER 404(b). 1 RP at 94. The State responded that Grier's waving the gun and threatening Nathan was "part of the chain of events that occurred that evening." 1 RP at 96. The trial court orally denied Grier's motion to exclude, stating, "[Y]ou [Grier] *can raise an objection at the time if you don't have an exception such as res gestae or anything else as relates to that evening only.*" 1 RP at 96 (emphasis added). The trial court then issued an order in limine denying Grier's request to "preclude mention of threats and/or threatening behavior such as waving of guns by [Grier] on the day in question." CP at 29.

¶10 Grier also moved in limine to exclude statements about the derogatory names that she had called Nathan and Michaels the night of the murder. Grier's counsel told the trial court:

> [T]he statements by Nathan and [Michaels] and perhaps [Michelle Starr, murder victim Gregory Owen's girl friend], though I'm not sure about her [Starr], indicate that there was some name-calling going on there that evening. And specifically, I'm

concerned about any allegations of Ms. Grier calling her son [Nathan] or anyone else any names. They were, to say the least, unflattering, offensive.

1 RP at 97. The State again argued that the trial court should admit Grier's name-calling because it was "part of the chain of events that occurred that evening." 1 RP at 97.

¶11 The trial court orally denied Grier's motion, stating, "I will deny this motion with regard to any statements made by the witnesses with regard to *name-calling* as that *would be a part of what happened that evening*." 1 RP at 98 (emphasis added). The trial court later entered a written order denying Grier's motion in limine "to preclude mention of name-calling by [Grier] to Nathan . . . or Mich[a]els." CP at 30. The trial court did, however, grant Grier's motions in limine to exclude mention of Grier's "past or present drug use" and "any drugs or drug paraphernalia found in [Grier's] house." CP at 29.

## II. Jury Trial

¶12 In addition to the testimony described in our 2009 opinion, gunshot trace analyst Patricia Eddings testified about finding (1) "quite a bit of plant material"[5] on a "red sweatshirt"[6] that police had taken from Grier's hospital room and (2) "large pieces of plant material" and "an additional amount of loose plant material which was burned" in a "debris packet" that the Washington State Patrol crime lab had collected. 6 RP at 766-67. Grier objected, requested a sidebar, and argued, "[I]t's obvious" that the "plant matter" to which Eddings referred in her testimony was "marijuana," which an order in limine prevented the State from mentioning. 6 RP at 768. The trial court sustained Grier's objection. Grier did not request a curative instruction to disregard the plant material testimony; nor did she request a new trial.

---

[5] 6 RP at 758.

[6] 6 RP at 757.

¶13 Michaels testified that (1) at some point during the night Owen was shot,[7] Nathan had initiated a conversation with Grier, telling her that she "couldn't kill somebody,"[8] to which Grier had responded, "[Y]es, she could," and "that she could shoot [Nathan] if she wanted to"[9]; (2) when Grier "wav[ed] [her guns] at Nathan in the kitchen" and "almost us[ed] it like a pointer, kind of,"[10] Nathan had said, "Go ahead and do it"[11]; and (3) Grier had then "put the gun away." 3 RP at 445.

¶14 Nathan testified that Grier had said he "was not a good son."[12] Starr testified that Grier had called Nathan "a little punk, a bitch, . . . a loser, . . . a wimp and not a man." 2 RP at 228. Starr also testified that (1) Grier had called Michaels "an Asian whore" and had said that "she [Grier] couldn't stand [Michaels]"[13]; (2) Owen, Starr, and their daughter had gone to Grier's house for dinner sometime during the week before Owen's death; (3) during this visit, Grier had displayed to Owen and Starr a handgun in the waistband of her pants; and (4) Owen had jokingly asked Grier if she thought her gun was "big and bad." 2 RP at 214. Grier objected to this testimony, contending, "It's irrelevant what's going on a week before." 2 RP at 214. The trial court overruled Grier's objection.

¶15 Grier appealed her conviction and sentence. We reversed her conviction on ineffective assistance grounds because her trial counsel had withdrawn his request for a

---

[7] Michaels could not remember whether Nathan had made this comment before Owen, Starr, and their daughter arrived at Grier's house.

[8] 3 RP at 480.

[9] 3 RP at 444.

[10] 3 RP at 445.

[11] 3 RP at 444.

[12] 2 RP at 141.

[13] 2 RP at 226.

lesser included instruction.[14] The Supreme Court reversed our decision and remanded to us to address her remaining arguments.[15]

## ANALYSIS

### "RES GESTAE" EVIDENCE

¶16 Grier raises numerous evidentiary challenges on appeal, only some of which she has properly preserved.[16] Consequently, we address only her preserved challenges to the following evidence: (1) that on the night of the murder, she waved a gun around, told Nathan that she could kill him,[17] and called Nathan and Michaels insulting names;

---

[14] *Grier*, 150 Wn. App. at 645-46.

[15] *Grier*, 171 Wn.2d at 45.

[16] Grier cannot raise an issue for the first time on appeal unless she demonstrates that it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *see also State v Grimes*, 165 Wn. App. 172, 185-88, 267 P.3d 454 (2011), *petition for review filed*, No. 86869-7 (Wash. Jan. 3, 2012); *State v. Bertrand*, 165 Wn. App. 393, 400-01, 267 P.3d 511 (2011), *petition for review filed*, No. 86903-1 (Wash. Jan. 11, 2012). Generally evidentiary errors are not of constitutional magnitude. *State v. Chase*, 59 Wn. App. 501, 508, 799 P.2d 272 (1990). Grier has not shown that the following nonpreserved evidentiary errors fall within this exception to RAP 2.5(a), and, therefore, we do not further address them: (1) her withholding money from Nathan's Social Security benefits checks; (2) Nathan's "g[etting] kicked out" of her house because she "didn't want" Nathan at her house, Nathan's living in foster care "for a couple of months," and Nathan's returning to live at her house for three days before Owen was killed, 2 RP at 124, 140, 150; (3) Grier's shooting her gun at unidentified people who drove into her driveway in the middle of the night and "rev[ved] their engines" on occasions before the shooting, 2 RP at 136; (4) Grier's telling Starr, on the night of the murder, about Grier's thoughts that "people were in her attic" and that Grier's boyfriend had sent somebody to rape her (Grier); and (5) Grier's unemployment status the night of the murder. 2 RP at 219.

[17] During a pretrial hearing, Grier informed the trial court that "there was mention made by [Nathan and Michaels in their statements] about . . . some threats and/or waving around of a gun by Ms. Grier to Nathan." 1 RP at 94. Grier asked the trial court to exclude "any reference to any previous alleged threats . . . and that's to include any waving around of any guns"; Grier contended that such evidence was irrelevant and inadmissible "conformity" evidence under ER 404(b). 1 RP at 94. The State responded that Grier's waving a gun around and threatening Nathan was "part of the chain of events that occurred that evening." 1 RP at 96. Although the trial court denied Grier's motion to suppress, it also told her, "[Y]ou can raise an objection at the time if you don't have an exception such as res gestae or anything else as relates to that evening only." 1 RP at 96.

and (2) that the week before Owen was murdered, she had brandished a gun during a dinner party at which Owen was present. The trial court admitted evidence of events the night of the murder under the "res gestae" exception to ER 404(b). We agree with the trial court that this evidence was admissible, but we uphold its admission on alternative grounds, departing from characterizing "res gestae" evidence as an "exception" to ER 404(b). 1 RP at 96. In our view, Grier's name-calling, threatening gestures, and statements the night of the murder were not "[e]vidence of other crimes, wrongs, or acts" under ER 404(b). Rather, we hold that this "res gestae" evidence was relevant and admissible under ER 401 and 402 as part of the events leading up to and culminating in the murder.

¶17 The trial court did not make a pretrial ruling on the admissibility of Grier's brandishing a gun during the previous week's dinner party; nor did the trial court explain why it overruled Grier's relevancy objection to the testimony about the dinner party. Assuming, without deciding, that this evidence was too attenuated to be considered "res gestae," we hold that any error in its admission was harmless.

## A. Standard of Review

¶18 We review a trial court's evidentiary rulings for abuse of discretion. *State v. Lormor*, 172 Wn.2d 85, 94, 257 P.3d 624 (2011). A trial court abuses its discretion when it exercises it on untenable grounds or for untenable reasons. *Lormor*, 172 Wn.2d at 94. We leave credibility determinations to the trier of fact; such determinations are not subject to appellate review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We review questions of law de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). Furthermore, we can affirm the trial court's rulings on any grounds the record and the law support. *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004). We find no abuse of discretion in the trial court's admission of evidence here.

## B. Grier's Name-Calling and Threatening Behavior the Night of the Murder

¶19 We accept the trial court's characterization of Grier's calling Nathan and Michaels derogatory names and making gun threats to Nathan the night of the murder as "res gestae" evidence. But we depart from characterizing this "res gestae" evidence as an exception to ER 404(b), despite our state courts' recognition of "a res gestae or 'same transaction' exception"[18] to ER 404(b) if the evidence is admitted "to complete the crime story by establishing the immediate time and place of its occurrence." *State v. Hughes*, 118 Wn. App. 713, 725, 77 P.3d 681 (2003), *review denied*, 151 Wn.2d 1039 (2004).

¶20 In our view, and as other courts and legal scholars have noted, this judicially created "res gestae" exception bears little or no resemblance to the specific exceptions that ER 404(b) enumerates,[19] inviting contemplation of the ejusdem generis rule of statutory construction:[20]

[W]hen a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items

---

[18] *State v. Hughes*, 118 Wn. App. 713, 725, 77 P.3d 681 (2003) (quoting *State v. Brown*, 132 Wn.2d 529, 570-71, 940 P.2d 546 (1997); *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995)), *review denied*, 151 Wn.2d 1039 (2004).

[19] Other courts and commentators also note that characterizing the "res gestae" rule as an exception to ER 404(b) is indefinite, is prone to abuse, and "tends merely to obscure" ER 404(b) analysis. *United States v. Krezdorn*, 639 F.2d 1327, 1332 (5th Cir. 1981); *see also United States v. Bowie*, 344 U.S. App. D.C. 34, 232 F.3d 923, 928-29 (2000); 1A JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 218, at 1888 (Tillers rev. 1983); EDWARD W. CLEARY, MCCORMICK ON EVIDENCE § 288 (3d Lawyer's ed. 1984); 2 JACK B. WEINSTEIN, WEINSTEIN'S EVIDENCE ¶ 404[10], at 404-79 (1989). We further note that many states have discontinued using the term "res gestae" in the context of admitting evidence of other crimes, wrongs, or acts. *See, e.g.*, *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006); *State v. Rose*, 206 N.J. 141, 146, 19 A.3d 985 (2011); *People v. Dennis*, 181 Ill. 2d 87, 97-98, 692 N.E.2d 325, 229 Ill. Dec. 552 (1998); *State v. Fetelee*, 117 Haw. 53, 81, 175 P.3d 709 (2008).

[20] The principles of statutory construction are equally applicable to rule construction. *State v. Kray*, 31 Wn. App. 388, 390, 641 P.2d 1210 (1982), *dismissed on remand*, 36 Wn. App. 1060 (1984).

of the same type as those listed. • For example, in the phrase *horses, cattle, sheep, pigs, goats, or any other farm animal,* the general language *or any other farm animal* — despite its seeming breadth — would probably be held to include only four-legged, hoofed mammals typically found on farms, and thus would exclude chickens.

BLACK'S LAW DICTIONARY 556 (8th ed. 2004); *see also State v. Gonzales Flores,* 164 Wn.2d 1, 13, 186 P.3d 1038 (2008). ER 404(b) provides a nonexhaustive list of examples of "other purposes" for which trial courts may admit "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," namely, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Except for identity, these enumerated exceptions concern the defendant's state of mind or thought process. In contrast, "res gestae" evidence pertains to the factual context of the crime, not to the defendant's mindset. In our view, "res gestae" evidence is so unlike the expressly listed ER 404(b) exceptions that considering "res gestae" evidence to be an ER 404(b) exception contravenes the ejusdem generis doctrine.

¶21 In our view, "res gestae" evidence more appropriately falls within ER 401's definition of "relevant" evidence, which is generally admissible under ER 402.[21] *Compare State v. Lane,* 125 Wn.2d 825, 831, 889 P.2d 929 (1995) (" 'res gestae' " evidence " 'complete[s] the story of the crime on trial by proving its immediate context of happenings near in time and place' " (internal quotation marks omitted) (quoting *State v. Tharp,* 27 Wn. App. 198, 204, 616 P.2d 693 (1980), *aff'd,* 96 Wn.2d 591, 637 P.2d 961 (1981))), *with* ER 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

---

[21] ER 402 provides, "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible."

would be without the evidence"). For these reasons, we agree with the trial court that Grier's threatening behavior on the night of the murder was admissible as "res gestae" evidence, (1) not only because it arguably might have fallen under an ER 404(b) exception, but (2) also because it was evidence of the continuing events leading to the murder, relevant under ER 401, and, thus, not "prior misconduct" of the type generally inadmissible under ER 404(b).

¶22 The following evidence was relevant under ER 401 because it " 'complete[d] the story of the crime on trial by proving its immediate context of happenings near in time and place' "[22] and it " 'depicted' " a " 'complete picture . . . for the jury.' " *State v. Acosta*, 123 Wn. App. 424, 442, 98 P.3d 503 (2004) (internal quotation marks omitted) (quoting *State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997)). Michaels testified that (1) at some point that night, Nathan initiated a conversation with Grier, telling her that she "couldn't kill somebody"[23]; (2) Grier responded, "[Y]es, she could," saying "that she could shoot [Nathan] if she wanted to"[24]; (3) Grier "wav[ed] [her guns] at Nathan in the kitchen" and "almost us[ed] it like a pointer, kind of"[25]; and (4) when Nathan said, "Go ahead and do it,"[26] Grier then "put the gun away." 3 RP at 445. This testimony made several consequential facts "more probable"[27] because it (1) showed that Grier had possession of at least one gun at some point that evening, which pertained to the charge that Grier was armed with a firearm when she killed Owen; (2) helped establish why Nathan, Starr, and Owen had tried to take Grier's guns away from her; (3) bore on the factual

---

[22] *Lane*, 125 Wn.2d at 831 (internal quotation marks omitted) (quoting *Tharp*, 27 Wn. App. at 204).

[23] 3 RP at 480.

[24] 3 RP at 480, 444.

[25] 3 RP at 444-45.

[26] 3 RP at 444.

[27] ER 401.

question of who had possession of guns that evening; and (4) contradicted Grier's self-defense argument that she had acted "in resistance to a felony" and in "defense of Nathan." 8 RP at 971.

¶23 Years ago Division One of our court applied a similar analysis to analogous facts in *State v. Thompson*, 47 Wn. App. 1, 733 P.2d 584 (1987). Thompson argued that his aggressive and threatening conduct before shooting several people in a tavern parking lot was inadmissible prior misconduct under ER 404(b). *Thompson*, 47 Wn. App. at 4, 10. Witnesses described Thompson's walking out of the tavern, yelling and brandishing a gun shortly before the shooting, acting belligerently, pointing a gun at the witnesses' truck, and making a menacing comment as they drove by the tavern within an hour before the shooting. *Thompson*, 47 Wn. App. at 4. Division One held that this testimony was (1) *"relevant under the res gestae exception,* because this conduct took place in between the time Thompson [acted aggressively and threateningly] and the time of the shootings"; and (2) admissible because it provided a more complete factual context of the crime.[28] *Thompson*, 47 Wn. App. at 12 (emphasis added).

¶24 Similarly, testimony about Grier's brandishing a gun and acting belligerently before the shooting was admissible because it was relevant and it showed a continuing course of action by Grier. Grier's statements and behavior that evening help "set the stage" for her shooting of Owen later that night. *State v. Schaffer*, 63 Wn. App. 761, 770, 822 P.2d 292 (1991), *aff'd*, 120 Wn.2d 616, 845 P.2d 281 (1993). Michaels' testimony showed that Grier had possession of at least one gun at some point in the evening, which was relevant to the State's charge that Grier had been armed

---

[28] The *Thompson* court used two labels to describe this evidence in the same sentence: "relevant" and "res gestae." *Thompson*, 47 Wn. App. at 12. In our view, and as the *Thompson* opinion's analysis implicitly shows, these terms describe the same evidence characteristic: Evidence that completes the story of the crime ("res gestae" evidence) is also evidence that pertains to the existence of facts that are of consequence to the crime ("relevant" evidence). ER 401.

with a firearm when she killed Owen. Michaels' testimony "explained parts of the whole story which otherwise would have remained unexplained." *State v. Mutchler*, 53 Wn. App. 898, 902, 771 P.2d 1168 (1989).

¶25 Moreover, this testimony's potential prejudice did not "substantially outweigh[ ]" its probative value under ER 403. On the contrary, the testimony helped to complete the picture of the events of February 21, 2006 and served as a counterargument to Grier's self-defense contention that she shot Owen to protect Nathan.[29] Thus, ER 403 did not bar the admission of Michaels' testimony about Grier's threatening and aggressive behavior.[30]

---

[29] During closing argument, for example, Grier argued:

[The State] also ha[s] to prove in instruction . . . 15—and this is very important. They have to prove to you that this was not defense of self, not defense of Nathan.

. . . .

[Y]ou have to put yourself in the position that [Grier] was in, the instruction tells you, knowing what she knew, knowing the history of . . . Owen, in other words what might he do, that sort of thing. It's a man against a woman, a guy who is a pretty good-sized guy, 29 years old. [Owen] assaulted two women that night, his girlfriend [Michaels] and [Grier] earlier. He is drunk. Same blood alcohol as [Grier]. He fired a gun, believed to be armed, assaulted Nathan, put a gun in Nathan's mouth.

. . . .

And what reasonable person is going to stand by and watch their son have this happen? You can say what you want about her mothering skills that night, but you tell me any mother, any reasonable mother, that's going to stand by and let some guy do this to their son and not act upon it. To suggest that somebody should not, a 17-year-old boy who is disabled? Ridiculous. There is no reasonable parent that is going to watch their child be assaulted like this more than once and not do something about it.

8 RP at 971-73; *see also* 1 RP at 100 (Grier's trial counsel: "Just to clarify, we've done an omnibus order, and I don't think it's unclear that the defense here is defense of self and others.")

[30] We further note, in the alternative, even if Grier's gun threats arguably constituted "[e]vidence of other crimes, wrongs, or acts," inadmissible to prove character and action in conformity therewith, this evidence was admissible under the ER 404(b) "intent" and "absence of mistake" exceptions (1) to show that Grier acted "[w]ith intent to cause the death of another person," an element of the second degree murder under RCW 9A.32.050, which element she denied; and (2) to rebut Grier's characterization that she had merely been "wrestling" with Owen when a "shot [wa]s fired" from a gun that nobody saw, which characterization implied that the gunshot was accidental, maybe even self-inflicted, and that Grier did not act

¶26 Similarly, we find no abuse of discretion in the trial court's admission of Grier's name-calling the night of the murder, which, like her threats and gun waving, was relevant "res gestae" evidence, admissible under ER 402 to " 'complete the story of the crime on trial by proving its immediate context of happenings near in time and place.' "[31] *Lane*, 125 Wn.2d at 831 (internal quotation marks omitted) (quoting *Tharp*, 27 Wn. App. at 204).[32] Furthermore, any unfair prejudicial effect of this testimony was low in light of the other evidence in this second degree murder trial, especially Grier's claim of self-defense. We hold, therefore, that ER 403 did not require exclusion of this name-calling evidence because the danger of its unfair prejudice did not outweigh its probative value.[33]

---

"[w]ith intent to cause the death of another person." ER 404(b); 8 RP at 967; RCW 9A.32.050.

[31] Even if admission of this evidence were error, such error was harmless.

[32] The trial court in *Lane* (1) admitted evidence of other crimes or acts under the "res gestae" exception to ER 404(b) because the incidents had taken place during a 48-hour time span before or after the charged crime and, thus, were "basically relevant"; and (2) determined that the evidence related to the defendants' "participation or degree of participation" in the charged crimes. *Lane*, 125 Wn.2d at 834. Our Supreme Court held that, in so ruling, the trial court did not abuse its discretion. *Lane*, 125 Wn.2d at 835. The Court held as follows:

> Once the trial court has found res gestae evidence relevant for a purpose other than showing propensity and not unduly prejudicial, that evidence is admissible under the res gestae exception to ER 404(b) . . . .
> . . .We find a sufficient basis on which to affirm the trial judge's determination under an abuse of discretion standard. The [*Lane*] trial court was aware of this court's decision in [*Tharp*]. *It found the evidence relevant because of its proximity in time and place to the crimes charged and because it showed the degree of participation of the various Defendants.*

*Lane*, 125 Wn.2d at 834-35 (emphasis added).

Two years later, the Supreme Court cited *Lane* with approval in *Brown*, 132 Wn.2d at 576 n.107, for the principle that "evidence of events occurring within a two- or three-day period of the charged crime [is] admissible under res gestae exception to ER 404(b)."

[33] Even assuming, without deciding, that the trial court erred in introducing evidence of Grier's name-calling, because admission of this evidence was not prejudicial, error, if any, would have been harmless: This evidence was of minor significance in reference to the overwhelming evidence as a whole. *See State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). A rational juror would not believe that Grier was more likely to have killed Owen merely because she had

¶27 Accordingly, we hold that the trial court did not abuse its discretion when it admitted Michaels' testimony about Grier's gun waving, threats, and name-calling the night of the murder under the "res gestae" exception to ER 404(b).

## C. Grier's Gun Brandishing the Week before the Murder

¶28 Grier also argues that the trial court erred in overruling her relevancy objection to Starr's testimony that Grier thought her guns were " 'big and bad' "[34] while brandishing a gun in her waistband a week before the murder. Br. of Appellant at 39.[35] We disagree and conclude that, even if admission of this evidence was error, such error was harmless.

¶29 Even if the trial court erred in admitting this evidence, its admission was harmless because we cannot say that "within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *Tharp*, 96 Wn.2d at 599. The jury heard ample evidence linking Grier to possessing and owning guns on the night of the murder and evidence of Grier's aggressive behavior that night. Therefore, in light of evidence presented at trial, this error, if any,[36] would not have

---

called Nathan and Michaels derogatory names earlier that evening. Thus, in light of the ample testimony supporting the jury's verdict, any error in the trial court's admission of evidence of Grier's name-calling was harmless.

[34] Br. of Appellant at 39 (quoting 2 RP at 214).

[35] Grier argues (1) that the testimony indicating that "[she] in essence said her guns were 'big and bad' " was "irrelevant because [her] braggadocio, occurring in the context of a friendly dinner party with Owen, did not tend to make it any more likely that she shot Owen a week later"; and (2) that her "[c]ounsel was deficient in failing to timely object to Starr's testimony that Grier displayed her guns the week before" because "[c]ounsel simply objected too late." Br. of Appellant at 39 (quoting 2 RP at 214). Grier specifically asserts that her counsel was ineffective for not objecting because the evidence was "irrelevant" and "unfairly prejudicial under ER 403 and ER 404(b)." Br. of Appellant at 39. We separately address and reject Grier's ineffective assistance of counsel claims related to this issue.

[36] Defense counsel objected to this evidence on the grounds of relevancy. Therefore, in reviewing the trial court's exercise of its discretion in admitting this

affected the outcome of the trial "within reasonable probabilities." *Tharp*, 96 Wn.2d at 599.

¶30 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J., and VAN DEREN, J., concur.

---

evidence, we need determine only whether this evidence satisfied the relevancy standard under ER 401.