FILED
COURT OF APPEAL
DIVISION II

2013 MAY 14 AM 9:0

STATE OF WASHINGTON

BY _____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42266-2-II |
| Respondent, | |
| v. | |
| ANDREW ALLAN WRIGHT, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. – Andrew Allan Wright appeals his convictions of first degree robbery and first degree assault, arguing that the evidence was insufficient to prove his guilt as an accomplice and that he received ineffective assistance of counsel when his attorney failed to object to the admission of testimony concerning his arrest, his incarceration, and a possible motive. Wright raises other issues in a pro se statement of additional grounds (SAG). Finding no prejudicial error, we affirm.

## FACTS

In January 2011, Daniel Force was working as a security guard at an apartment complex. Several security cameras in the parking lot were connected to monitors in his 8x8 foot bedroom. Late in the evening of January 21, Force and his friend David Jones were in the bedroom, looking at laptop computers.

The security monitors showed a car pull up and park in the lot just outside Force's apartment. Force recognized Wright as the driver, and he knew Wright's passengers as well: Nathan Gadberry and Armando Castillo-Munoz. He and Jones watched the three men walk up the stairs. Force opened the door and the three men entered.

Wright sat in a chair directly across from the futon where Jones was sitting. Gadberry stood to the side, and Munoz stood in front of Jones. Munoz said, "So, what do you think?" 2B Report of Proceedings (RP) at 211. When Jones responded that he did not understand, Munoz pulled out a gun and cocked it and said that Jones owed him money. Jones told Munoz he had no money and could not repay him, and Munoz struck Jones in the head with his hand. Munoz then demanded that Jones give him his watch and his gold ring. When Jones complied, Munoz handed the items to one of the others and struck Jones in the head with his gun.

Munoz then told Jones to give him his car and the signed title. When Jones said the title was not in his name, Munoz struck him repeatedly in the head with the gun. The gun fired, hitting Jones in the hand he was using to shield himself. Although he and Jones were long time friends, Wright did not say anything and did not come to Jones's aid. Instead, he left with Gadberry and Munoz. Force drove Jones to the hospital, and when Jones told the emergency room personnel that he had been shot, they called the police. Jones received treatment for lacerations to his skull and bullet wounds to his left thumb and middle finger.

Jones told the responding officers what had happened and identified the three men who had entered Force's apartment. About a week later, the officers arrested Wright and questioned him. After initially denying all knowledge of the incident, Wright admitted that he witnessed the shooting. He stated that Jones had repaid a debt to him but still owed Munoz money, that Munoz struck Jones several times with the gun, and that the gun went off in the process. Wright denied seeing Munoz take a watch and ring from Jones.

Before his arrest, Wright told Shannon Tandberg that he witnessed Jones's shooting when he was collecting a debt. Wright had a key to Tandberg's residence and had previously left

a safe there. When Tandberg returned home after a few days' absence and learned of Wright's arrest, she drilled the safe open and discovered a gold ring.

Following his arrest, Wright called his half brother, Gabriel Salisbury, from jail and asked him to go to Tandberg's residence, retrieve a gold ring from a safe, and destroy it. Salisbury retrieved the ring and cut it into pieces. He later gave some of those pieces to the police, and Jones identified them as parts of the ring Munoz took from him.

The State charged Wright with first degree robbery and first degree assault as an accomplice with Munoz and Gadberry. Both charges included firearm enhancements. Wright was tried separately. Jones, Force, Salisbury, Tandberg and the detectives testified to the facts set out above. Wright was the sole defense witness.

Detective Lindsay Schultz, one of the officers who interviewed both Jones and Wright, described Jones as "pretty forthcoming" about the incident when she talked to him at the hospital. 1 RP at 51. When she interviewed Wright, he denied but then admitted that he was in Force's apartment. When asked about the contradiction, she explained,

> [I]t was a difficult interview in the sense that it was a lot of give and take[.] . . .
> Mr. Wright would only respond as little as he could give me to see what
> information I knew. . . . So, he was not forthcoming with the information while
> we were trying to interview him.

1 RP at 59-60.

Detective Todd Barsness testified that Wright was an early suspect in the January 21 incident who was not apprehended until January 27. Barsness described his interview with Wright as "very challenging," with Wright being very cautious about the information he shared. 2A RP at 143. The detective added that Wright initially said he had no idea how the incident came about. The detective then explained that "we had reason to believe that the reason for the

3

visit by Mr. Wright and Armando was to reclaim a drug debt," and that when he shared that information, Wright admitted Munoz might have been in Force's apartment because of a debt. 2A RP at 145. Wright added that Jones owed him $150, and that because Jones did not have any money, Munoz was looking for property. Wright also told the officers that Munoz supplied him with drugs.

Jones testified that he owed Wright about $300 but was not indebted to Munoz. He added that he felt threatened by Gadberry and Wright as well as Munoz and knew the three men were associated with each other. Force testified that he was aware there could have been a debt and that he and Jones used methamphetamine before Wright and his friends arrived.

When Salisbury testified about Wright's call from jail concerning the ring, defense counsel objected to the admission of the recording on foundational grounds, and the State authenticated the recording through Salisbury. The State played excerpts of the call for the jury.

Wright testified that Jones was a long time friend and that Munoz was a drug supplier. He said that he went to Force's apartment by himself to buy methamphetamine, that he met Gadberry and Munoz at the apartment complex by coincidence, and that the two men followed him upstairs and into Force's apartment. He denied any plan to be with the two men, to assault Jones, or to collect a debt. Wright said that Jones had the gun and that it discharged when he and Munoz struggled. He explained that he bought a ring from Force a few days after the shooting and gave it to Tandberg, and that he asked his brother to retrieve the ring after Tandberg returned to her old boyfriend. On cross examination, he admitted telling the detectives that Munoz had the gun, and he acknowledged failing to mention that Force was a drug dealer, explaining that his mind was rattled after his arrest. He further acknowledged that he denied but then admitted

during the interview that he knew Munoz. On rebuttal, Detective Schultz again stated that interviewing Wright was "very difficult because he was not forthcoming at all." 3 RP at 552.

The trial court instructed the jury on accomplice liability and the State argued that Wright was an accomplice to Jones's robbery and assault. The jury found Wright guilty of first degree robbery and first degree assault but rejected the firearm enhancement on each count. During sentencing, the trial court vacated Wright's sentence on the robbery count on double jeopardy grounds. The trial court imposed a standard range sentence of 276 months on the assault conviction.

## ANALYSIS

### I. ACCOMPLICE LIABILITY

Wright contends that his right to due process was violated when the trial court accepted the jury's guilty verdicts because there was insufficient evidence to convict him of either first degree robbery or first degree assault as an accomplice.

Due process requires the State to prove its case beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

The trial court gave the jury the following instruction on accomplice liability:

> A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the crime.
>
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he either:
>
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
>
> (2) aids or agrees to aid another person in planning or committing the crime.
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Clerk's Papers (CP) at 78. The trial court then defined robbery and assault for the jury:

> A person commits the crime of robbery when he unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person. . . .
>
> . . . .
>
> A person commits the crime of assault in the first degree when, with intent to inflict great bodily harm, he or she assaults another with a firearm or with any deadly weapon or by any force or means likely to produce great bodily harm or death.

CP at 79, 86.

To prove that Wright was an accomplice to Jones's robbery and assault, the State had to prove beyond a reasonable doubt that Wright (1) knew his actions would promote or facilitate these crimes, (2) was present and ready to assist in some manner, and (3) was not merely present at the scene with some knowledge of potential criminal activity. RCW 9A.08.020(3); *State v. Asaeli*, 150 Wn. App. 543, 568, 208 P.3d 1136 (2009).

6

Wright argues on appeal that his involvement in the crimes was no greater than that of the alleged accomplice in *Asaeli*, whose second degree murder conviction was reversed by this court. The record in *Asaeli* showed that Darius Vaielua was present near the murder scene with knowledge that his friends were looking for the victim. 150 Wn. App. at 570. There was some evidence that Vaielua and the others were acting in concert that related to motive, but no evidence that Vaielua was aware that the group was planning to do more than locate the victim and no evidence that he was aware of a plan to assault or kill the victim. *Asaeli*, 150 Wn. App. at 569 n.31. Accordingly, the evidence was insufficient to prove Vaielua's complicity in the shooting. *Asaeli*, 150 Wn. App. at 569-70.

The State responds that the evidence of Wright's participation in the crimes against Jones was far greater than Vaielua's criminal activity. Viewed in the light most favorable to the State, the evidence shows that Jones was indebted to Wright and that Wright had a motive to take money or property from Jones by force or threat of force. Wright drove Gadberry and Munoz to the apartment and led the way inside. He did nothing to assist Jones, his long time friend, even though he was sitting only a few feet from Jones during the confrontation. Rather, he fled with Munoz and Gadberry after the shooting. Jones saw Munoz hand his ring and watch to someone else, and Wright later instructed his brother to destroy the ring.

We agree with the State that the evidence is sufficient to uphold the jury verdicts on the theory of accomplice liability. There was sufficient evidence for a rational trier of fact to conclude that Wright brought Munoz to the apartment, acted as an intimidating presence who afforded Munoz the opportunity to rob and assault Jones, hid Jones's ring in a safe at his friend's house and then, after his arrest, recruited his brother to destroy the ring. Taken together, this

evidence supports a rational conclusion that Wright was an accomplice to both the robbery and the assault.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

Wright contends that he received ineffective assistance of counsel because his attorney failed to object when the State elicited evidence that (1) Wright was arrested and jailed and the officers did not believe his post-arrest statements and (2) the officers had heard Wright was collecting a debt from Jones.

To demonstrate ineffective assistance of counsel, the defendant must show that his counsel's performance was deficient and that counsel's deficiency was prejudicial. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998). Prejudice is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Saunders*, 91 Wn. App. at 578. More specifically, where the defendant claims ineffective assistance based on counsel's failure to challenge the admission of evidence, the defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the failure to object; (2) that an objection likely would have been sustained; and (3) that the trial's result would have differed had the evidence not been admitted. *Saunders*, 91 Wn. App. at 578. "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

Wright first contends that defense counsel was deficient in failing to object when the State repeatedly elicited evidence that he had been arrested and jailed. In describing the course of her investigation, Schultz explained that Munoz was arrested on January 25 and that Wright was taken into custody the following day. Barsness testified that Wright was identified as a

8

suspect early in the investigation and apprehended on January 27. Salisbury testified that he knew his brother was in jail in January and that he received a call from him on January 31. Tandberg testified that when she talked to Wright before he went to jail, he admitted being present during the shooting, and she also testified that Salisbury came to her house after Wright's arrest. Detective Kevin Harper testified that he listened to the jail phone call between Wright and Salisbury about the ring. Defense counsel did not object to any of these references to Wright's arrest and incarceration.

Wright argues on appeal that these references were equivalent to inadmissible opinions as to his guilt. Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial because it is inconsistent with the principle that the determination of the defendant's guilt is solely a question for the trier of fact. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001); *State v. Carlin*, 40 Wn. App. 698, 701, 700 P.2d 323 (1985), *overruled on other grounds*, *City of Seattle v. Heatley*, 70 Wn. App. 573, 854 P.2d 658 (1993).

Wright cites no case, however, in which a witness's testimony about the fact of the defendant's arrest or incarceration on the current charges was deemed an inadmissible opinion as to the defendant's guilt. And, as the State points out, there is case law holding that evidence concerning the defendant's arrest on the crime charged is admissible if it has probative value. *State v. Woodring*, 37 Wn.2d 281, 285, 223 P.2d 459 (1950). The State contends that the testimony concerning Wright's arrest and subsequent incarceration was probative and relevant res gestae evidence that completed the story of the crimes on trial. *See State v. Grier*, 168 Wn. App. 635, 646, 278 P.3d 225 (2012) (res gestae evidence completes the story of the crime on trial by proving its immediate context of happenings near in time and place).

The evidence of Wright's arrest completed the story of the investigation and provided context for Wright's post-arrest interview. That interview was a key part of the State's evidence, as it contradicted Wright's testimony on several points. The fact of Wright's arrest also explained why Tandberg drilled open the safe and found the ring and why Wright called Salisbury about destroying the ring. Counsel objected to the phone call on foundational grounds, which required the State to explain its circumstances. Wright now complains that evidence of how and why the call was recorded was irrelevant and prejudicial, but it was defense counsel who required admission of this evidence. The fact that counsel's foundational objection did not succeed does not demonstrate ineffective assistance of counsel. *See State v. Dow*, 162 Wn. App. 324, 336, 253 P.3d 476 (2011) (criminal defendants are not guaranteed successful assistance of counsel). We also note that defense counsel explored the circumstances of Wright's arrest and post-arrest statements in cross examining several witnesses. We see no deficiency in counsel's decision to address this evidence rather than object to it. *See Madison*, 53 Wn. App. at 763 (decision of whether to object is classic example of trial tactics).

Wright also complains about his attorney's failure to object when Schultz described him as "not forthcoming" during his post-arrest interview. 1 RP at 60. This was the inference she drew from what she characterized as a difficult interview, and we do not view it as an opinion of guilt that warranted an objection. Instead of objecting, defense counsel referred to this testimony in explaining during closing argument why Wright was not forthcoming during his interview. Again, this decision does not constitute deficient performance.

Finally, Wright argues that Barsness's testimony that he had heard Wright was collecting a debt from Jones was inadmissible hearsay to which defense counsel should have objected. *See State v. Stenson*, 132 Wn.2d 668, 710, 940 P.2d 1239 (1997) (hearsay is out-of-court statement

10

offered to prove the truth of the matter asserted). The detective explained that this information led Wright to admit that a debt might have been the reason for Munoz's presence at Force's apartment. Schultz had already testified that Wright told the officers that he, Gadberry, and Munoz were at Force's apartment because Jones owed Munoz money and that he witnessed Munoz's debt collection efforts.

Barsness's initial testimony about the debt may have been hearsay, but it was cumulative of the evidence that had already been admitted and that was subsequently confirmed by other witnesses, including Wright himself. We do not see that the trial's outcome was affected by the detective's testimony. *See State v. Ramirez-Estevez*, 164 Wn. App. 284, 293, 263 P.3d 1257 (2011) (admission of testimony that is otherwise excludable is not prejudicial error where similar testimony was admitted earlier without objection), *review denied*, 173 Wn.2d 1030 (2012). Consequently, we reject Wright's claim that he received ineffective assistance of counsel.

III.    SAG

Wright raises several claims of error in a pro se statement of additional grounds. He first contends that the trial court gave an erroneous accomplice liability instruction, but the instruction adhered to the pattern jury instruction and the requirement that the defendant have knowledge of "the crime" charged. 1 CP at 78; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS § 10.51, at 219 (3d ed. 2008) (WPIC). Wright also complains that the "to convict" instruction on assault referred to the requirement that the jury find that he or an accomplice satisfied each element of first degree assault without again incorporating the full definition of accomplice liability, but we see no error in this regard. WPIC 10.51, at 221. To the extent that Wright challenges the sufficiency of the evidence, we have already addressed that issue.

Wright next asserts that the prosecutor misrepresented the evidence during closing argument with these statements:

[T]he Defendant or his accomplice intended to commit the theft of the property. Pretty clearly collection of a debt. To whom is the debt owed? He could owe both, frankly, he could owe both of these people.

. . . .

I am not here to prove to you that Mr. Armando Castillo-Munoz intentionally shot the victim. I am here to prove to you that he had a firearm, that the firearm was part of—of the crime, and . . . an essential instrument of the crime, that it is in fact a deadly weapon, that the firearm is capable of firing a projectile. . . . And, so when you look at that issue I would ask, you know, just think about how it was used and not necessarily to focus on this crime as to what our duty is to that or that.

. . . .

The guy who walks out with the property and is the most controlled there, just happens to be there, or he is the reason they got there. He is the reason they are doing what they are doing and he is also the reason because he had the ring.

4 RP at 620, 621, 667-68. Defense counsel did not object to any of these arguments.

Wright contends that these statements violated a subsection of ER 801, but this contention is misplaced. *See* ER 801(d)(2)(ii) (statement is not hearsay if it is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth). A prosecuting attorney may base his closing argument on inferences from the evidence. *See Stenson*, 132 Wn.2d at 727 (prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury). The first and third statements above were reasonable inferences drawn from the evidence. Wright contends that the second statement improperly relieved the jury of its duty, but we disagree with this assessment. The second statement was simply an attempt to assert that an intentional shooting was not required to prove assault. Any error in this statement was not so flagrant that it could not have been neutralized by an admonition to the jury, so we need not address it further. *See State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994) (failure to object to improper remark constitutes

waiver of error unless remark is so flagrant and ill intentioned that prejudice could not have been cured by admonition to jury).

Wright also argues that there was insufficient evidence to convict him of first degree assault because there was no proof that he was armed with a firearm. He maintains that this deficiency in the evidence is demonstrated by the jury's rejection of the firearm enhancement. We do not see the assault verdict as either inconsistent or based on insufficient evidence. The jury could have concluded that Wright was an accomplice to the assault without proof that Wright himself was armed, as was required for the special verdict instruction. *State v. Burke*, 90 Wn. App. 378, 387-88, 952 P.2d 619 (1998).

Wright next argues that to convict him of first degree assault as an accomplice, the State had to prove that Munoz intentionally shot Jones. As the trial court instructed the jury, the State did not have to prove an intentional shooting to establish that Munoz acted with the intent to inflict great bodily harm. RCW 9A.36.011. The evidence was sufficient to satisfy the intent element of first degree assault.

Finally, Wright contends that the combination of error described above entitles him to relief due to cumulative error. *See State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000) (cumulative error doctrine applies when no single error justifies reversal but when combined error denied defendant a fair trial). Having rejected his earlier claims, we also reject his claim of cumulative error.

42266-2-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Van Deren, J.

_____
Worswick, C.J.