# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58271-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KADRIAN DAVIS, | |
| Appellant. | |

CHE, J. — Kadrian Davis appeals the trial court's denial of his RCW 10.73.170 postconviction motion for DNA testing.

Derrick White was shot in the shoulder during a fight at Reid Pedder's house. The shooter fled. Davis arrived at the scene with a friend named "Trey" to pick up White. Davis then forced Dalton Rogers into Davis' truck at gunpoint, ordering Rogers to provide directions to the house in Tillicum where the men believed the shooter was hiding.

Rogers directed the truck to the Tillicum house. After trying and failing to break down the door, Davis and Trey fired more than 20 rounds at the house. There were six people inside the house during the shooting. Davis, Trey, and White then returned Rogers to Pedder's house, where Davis and his friend punched several people before leaving.

The State charged Davis with 6 counts of first degree assault while armed with a firearm, 1 count of first degree kidnapping while armed with a firearm, and 1 count of first degree burglary. A jury convicted Davis of all charges and sentencing enhancements.

Several years later, Davis moved for postconviction DNA testing under RCW 10.73.170. His motion did not identify any evidence that should have been tested for DNA or explain how a favorable DNA test would demonstrate his innocence. The trial court summarily denied the motion.

On appeal, Davis argues that the trial court abused its discretion in denying the motion for DNA testing because the trial court did not appear to predicate its denial on any facts in the record and did not enter findings to support its decision. We affirm.

FACTS

I. BACKGROUND

The State charged Davis with 6 counts of first degree assault while armed with a firearm for the Tillicum shooting, 1 count of first degree kidnapping while armed with a firearm for the abduction of Rogers, and 1 count of first degree burglary for the entry into Pedder's house after the shooting. *State v. Davis*, No. 54660-4-II, slip op. at 5 (Wash. Ct. App. Apr. 26, 2022) (unpublished).[1] All of the counts except the first degree burglary charged Davis as a principal or an accomplice.

II. TRIAL

Pedder and Dominick Yerly got into a fight at Pedder's house. Yerly left, then returned with additional friends. Rogers and White were called to the house to aid Pedder. During the ensuing altercation, one of Yerly's friends shot White in the shoulder.

After Yerly's group fled, White called Davis, who, with Trey, drove to Pedder's house in a truck. Multiple people identified the truck as belonging to Davis and other people consistently

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2054660-4-II%20Unpublished%20Opinion.pdf

described the truck. At Pedder's house, the driver of the truck pointed a gun at Rogers and ordered him into the truck to take the men to where Yerly was thought to be. Rogers knew White but did not know the driver or the man with dreadlocks who sat in the front passenger seat. A witness identified the man with dreadlocks as "Trey." 10 Report of Proceedings (Oct. 16, 2019) at 801. Witnesses at Pedder's house identified Davis, White, and an unknown Black man with dreadlocks in the truck when it left with Rogers.

Upon arrival at a Tillicum house, the driver told Rogers he would be shot if he fled. White remained at the truck with Rogers. The driver and the man with dreadlocks ran toward the house then repeatedly fired guns at the house, which had six people inside at the time. The men in the truck then returned Rogers to Pedder's house. The men followed Rogers into Pedder's house without permission and punched several residents of Pedder's house. Witnesses at Pedder's house identified Davis as among the men who followed Rogers into the house without permission and punched people.

A detective testified about Davis' phone records. The records showed that on the night of the shooting, Davis' phone received a call at his house, then traveled to Pedder's house. Davis' phone then traveled towards the Tillicum house and was in that neighborhood from approximately 1:40 A.M. to 1:50 A.M. The residents of the Tillicum house called police to report the shooting at 1:46 A.M. Davis' phone then traveled to near Pedder's house around 2:10 A.M., before it returned to Davis' house at roughly 2:40 A.M.

Police witnesses testified that officers recovered twenty-two shell casings from the scene of the Tillicum shooting: fifteen 9 mm casings and seven .45 caliber casings. Police never found the firearms. There was no testimony that the casings were ever tested for fingerprints or DNA.

3

### III. VERDICT, SENTENCING, AND LATER PROCEEDINGS

The jury convicted Davis of all charges and sentencing enhancements. The trial court imposed a sentence of 582 months. Davis filed a direct appeal challenging his convictions, which this court affirmed in 2022.

In 2023, Davis filed a motion for postconviction DNA testing. In his motion, Davis asked the court "to grant DNA testing of any and all material" from his case. Clerk's Papers at 25. He did not identify any DNA testing that had previously occurred or explain how new DNA testing would provide significant new information. Davis attached a letter from the Washington State Patrol in response to a public disclosure request that explained the Washington State Patrol Crime Lab had no public record showing it tested any evidence in Davis' case.

The trial court summarily denied the motions for DNA testing.[2] Davis appeals the denial of the motion for DNA testing.

### ANALYSIS

#### POSTCONVICTION DNA TESTING

Davis argues that the trial court abused its discretion by denying his motion for postconviction DNA testing. He asserts, "the trial court failed to provide any explanation of the evidence it relied upon or the legal standard it applied," and therefore, "the decision must rest on unsupported facts." Br. of Appellant at 11. Davis contends that, even though he did not identify any specific evidence to be tested, the lack of findings in the court's order renders it untenable.

---

[2] Davis did not designate a transcript of the proceeding for our record. *See* No. 58371-6-II, Statement of Arrangements.

He asks that we remand for the trial court to either grant his motion or enter findings "from which he can formulate a more substantive appeal." Br. of Appellant at 13.

The State responds that the trial court's failure to articulate a basis for denying Davis' motion is irrelevant because Davis failed to comply with both the procedural and substantive requirements of RCW 10.73.170. Br. of Resp't at 15-22. We agree with the State.

RCW 10.73.170 allows people convicted of a felony to move for postconviction DNA testing if they meet certain requirements:

> (2) The motion shall:
> (a) State that:
> (i) The court ruled that DNA testing did not meet acceptable scientific standards; or
> (ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or
> (iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or *would provide significant new information*;
> (b) *Explain why DNA evidence is material* to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement; and
> (c) Comply with all other procedural requirements established by court rule.
> (3) The court shall grant a motion requesting DNA testing under this *section if such motion is in the form required by subsection (2) of this section*, and the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis.

RCW 10.73.170(2)-(3) (emphasis added). The procedural requirements are that the motion "state the basis for the request, explain the relevance of the DNA evidence sought, and comply with applicable court rules"; the substantive requirement is that the person show the evidence would more probably than not demonstrate their innocence. *State v. Riofta*, 166 Wn.2d 358, 364, 209 P.3d 467 (2009).

We review a trial court's denial of a motion for postconviction DNA testing for abuse of discretion. *Id.* at 370. "A trial court abuses its discretion if the decision rests on facts

unsupported in the record or was reached by applying the wrong legal standard." *State v. Crumpton*, 181 Wn.2d 252, 257, 332 P.3d 448 (2014). Nothing in RCW 10.73.170 expressly requires a trial court to enter written findings supporting the denial of a motion under the statute. And we may affirm on any basis that the record and the law support. *State v. Grier*, 168 Wn. App. 635, 644, 278 P.3d 225 (2012).

A court must assume that a DNA test result would be exculpatory. *Id*. at 260. "The statute requires a trial court to grant a motion for postconviction testing when exculpatory results would, *in combination with the other evidence,* raise a reasonable probability the petitioner was not the perpetrator." *Riofta*, 166 Wn.2d at 367-68. "It is only within the context of" the evidence presented at trial "that the court can determine whether DNA evidence might demonstrate innocence." *Crumpton*, 181 Wn.2d at 262. "While a court should not retry a case to decide this motion, the evidence at trial matters and should be taken into account." *Id*. at 263.

A court should grant a motion for postconviction DNA testing when an exculpatory test would clearly exonerate the defendant, such as in a rape case with a single perpetrator and no other sexual activity. *Id*. at 261 ("Any DNA evidence left on the items Crumpton petitioned to test would almost certainly have been left by the perpetrator of the rape. Exculpatory results of DNA testing in this case would directly affect the likelihood Crumpton was innocent.").

In contrast, a court generally does not abuse its discretion by denying a motion for DNA testing when the absence of the defendant's DNA would not exclude the defendant as a perpetrator. In *Riofta,* a shooter drove a stolen car and wore a white hat from the car during an assault. 166 Wn.2d at 363. Because Riofta's head was shaved, the white hat belonged to the owner of the stolen vehicle, and other people were in the vehicle after it was stolen, neither the

absence of Riofta's DNA nor the presence of a third person's DNA on the hat would exclude Riofta as a shooter. *Id*. at 370-71.

Here, the evidence at trial consisted of eyewitness testimony about the assaults, kidnapping, and burglary, as well as police testimony about Davis' phone records and the shell casings recovered from the scene of the Tillicum shooting. Neither of the guns used in the Tillicum shooting were recovered. And the jury received no DNA evidence.

There was compelling evidence that Davis committed the kidnapping, assaults, and burglary. Rogers testified that the driver of the truck pointed a gun at him, that the driver and passenger with dreadlocks committed the Tillicum shooting, and that both those men followed him into Pedder's house. Multiple other witnesses identified the truck that took Rogers as belonging to Davis and testified that Davis was in the truck, along with White and a man with dreadlocks. And witnesses stated that Davis was in the group that returned with Rogers to Pedder's house along with White and the man with dreadlocks.

Davis falls short of RCW 10.73.170's procedural requirements. No DNA evidence was presented in this case, so improved DNA testing would not necessarily change matters. Additionally, Davis does not identify any evidence that *should* have been tested for DNA, or how such evidence would provide significant new information. RCW 10.73.170(2)(a)(iii). Davis does not explain how DNA evidence is material to the identity of the perpetrator or accomplice when the evidence consisted of multiple people who identified both Davis and his truck, and showed Davis' cell phone traveling to the locations of the abduction, shooting, and burglary around the times of those events. As such, Davis also fails RCW 10.73.170's

substantive requirement because he cannot show a "likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3).

Because Davis' motion did not meet the statutory requirements, we hold that the trial court did not abuse its discretion by denying Davis' motion for postconviction DNA testing.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J_____
Che, J.

We concur:

_Maxa, J._____
Maxa, P.J.

_Lee, J._____
Lee, J.

8