# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49346-2-II |
| Respondent, | |
| v. | |
| ROGER DUANE CALHOON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — A jury found Roger Duane Calhoon guilty of attempting to elude a pursuing police vehicle. Calhoon appeals, arguing that the trial court erred by ordering a mechanical leg restraint during trial, granting the State's motion to continue trial, denying Calhoon's motion to proceed pro se, and admitting evidence of flight.[1] The trial court did not err. Therefore, we affirm.

In his statement of additional grounds (SAG),[2] Calhoon makes nine claims: (1) the charging document was improperly filed, (2) the trial court violated the time for arraignment rule, (3) the State improperly charged him with a felony, (4) the jury instructions were improper, (5) the State committed a *Brady*[3] violation, (6) the charging document improperly identified him, (7) he received ineffective assistance of counsel, (8) the trooper lacked probable cause to initiate the

---

[1] Calhoon also requests that we exercise our discretion to deny the State's request for appellate costs. The State has stated that it will not file a cost bill; therefore, we will not impose costs against Calhoon on appeal.

[2] RAP 10.10.

[3] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

traffic stop, and (9) there was insufficient evidence to support the jury verdict.[4] Calhoon's SAG claims fail.

## FACTS

The State charged Calhoon with attempting to elude a pursuing police vehicle.[5] After his arraignment, the trial court ordered a competency evaluation. Following the competency evaluation, the trial court found Calhoon incompetent to proceed to trial and ordered a 45 day competency restoration commitment at Western State Hospital. Following the competency restoration commitment, the trial court concluded that Calhoon was competent to proceed.

### I. MOTION TO PROCEED PRO SE

After the trial court found Calhoon competent, Calhoon filed a motion to proceed pro se. At the hearing, the trial court engaged in a lengthy colloquy with Calhoon regarding his desire to waive his right to counsel. During the colloquy, the trial court asked Calhoon about several motions he had filed including a "declaration of political citizen status, release and discharge and declaration of repudiation." Verbatim Report of Proceedings (VRP) (June 8, 2016) at 15; Clerk's

---

[4] Calhoon also raises several additional SAG claims: (1) the arresting officer committed perjury by designating him as "John Doe" when he refused to identify himself, (2) the Washington State Patrol (WSP) unlawfully received assistance from other agencies, (3) the WSP unlawfully seized a dashcam from his car, (4) WSP Trooper Ball committed perjury by stating that Calhoon was booked into jail on September 13, 2015, (5) the officers used excessive force during Calhoon's arrest, (6) the officers violated their oaths to serve and protect, (6) the prosecutor implied that Calhoon had evidence of his guilt, (7) the trial judge was not authorized to practice law, and (8) the State tried to intimidate him and for him to enter into a contract with the State as a driver for hire. However, Calhoon does not adequately inform us of the nature and occurrence of errors that effect the validity of his conviction or that would require reversal. RAP 10.10(c). Accordingly, we will not consider these SAG claims.

[5] RCW 46.61.024.

Papers (CP) at 180. Calhoon asserted that the trial court was "under the British Crown," under

"marshal law," and under the "law of sea jurisdiction." VRP (June 8, 2016) at 16, 18, 20. Calhoon

further asserted several times that he was not "an enemy combatant." VRP (June 8, 2016) at 19.

He also asserted that the declaration was necessary to repudiate "any beliefs that [he] may be part

or subject of the crown, that [he is] not to be or (stet) mischaracterized or referenced as a

corporation . . . in the all caps fashion as a federal franchise." VRP (June 8, 2016) at 19.

The trial court continued the colloquy to discuss Calhoon's comprehension of the

requirements and challenges of representing himself in a jury trial. When asked to explain his

understanding of the rules of evidence and criminal procedure, Calhoon responded that he had no

"legal training in those sections of fiction." VRP (June 8, 2016) at 32. Calhoon also asserted that

he did not believe that he would have any disadvantages representing himself in a jury trial unless

the judge was biased against him.

After reciting the legal standards it considered, the trial court ruled,

Mr. Calhoon I am left with the following conclusion. Number one, you strike me
as an intelligent person. I am not surprised that you were found competent to stand
trial, but I have grave concerns when I listen to you talk about your capacity to
represent yourself. I have grave concerns about your skill to represent yourself. I
do not believe you have the skill to represent yourself. But I want to be clear. I'm
not denying your motion on that basis. I have granted motions to represent
themselves to defendants when I had great concern about the defendant's skill and
that, frankly, has been borne out in those trials in which trial was conducted with
the defendant representing themselves. I'm not making that decision today that you
lack the skill and, therefore, I'm denying the motion.

I am denying your motion, Mr. Calhoon, because I don't believe that you
have the capacity to represent yourself based on what I am observing and based on
the words you are using and based on the submissions you have made, including
your understanding of the application of laws to you and to the authorities of this
court. I have no doubt that you sincerely believe what you have told the Court here
today, but I find that there is (sic) too many questions about your capacity to

3

represent yourself for me to permit you to do so. So I am denying the motion and I will sign an order consistent with the Court's ruling.

VRP (June 8, 2016) at 51-53; CP at 36. Calhoon proceeded to trial with court appointed counsel.

## II. MOTION TO CONTINUE

On June 15, 2016, the trial court held a pretrial status hearing. At the status hearing, the State made a motion to continue the June 20 trial date because the State's primary witness, Washington State Patrol (WSP) Trooper Maurice Ball, was unavailable due to a previously scheduled vacation, another state trooper witness was out of town, and a third trooper witness was scheduled to be in training. Based on the witnesses' availability, as well as the prosecutor's previously scheduled vacation, the State requested a new trial date of July 25. Throughout the hearing, Calhoon repeatedly turned on a microphone and interrupted the proceedings despite instructions not to do so.

The trial court found that, because of witness availability, there was good cause to continue the trial. The trial court recognized that Calhoon continued to be incarcerated but found that "while inconvenient to Mr. Calhoon and raising concerns with this court, the court does not see that the short continuance prejudiced (sic) the presentation of Mr. Calhoon's case." VRP (June 15, 2016) at 12. The trial court granted the State's motion to continue and Calhoon's trial was set for July 25.

## III. RESTRAINT HEARING

On the first day of trial, the State moved to have Calhoon restrained with a mechanical leg restraint during trial. Deputy Robert Olson of the Thurston County Sheriff's Office testified at the hearing. Deputy Olson testified that Calhoon was currently being held on bail and was classified

as "medium custody" at Thurston County Jail. I VRP at 49-50. Deputy Olson also testified that, although Calhoon did not have any infractions at the jail, there were several reports based on "odd behavior, oppositional behavior, [and] confrontational to the point of argumentative, not physical." I VRP at 50. Deputy Olson testified that the mechanical leg restraint was the least restrictive restraint, was worn entirely underneath the clothing, was not visible to jurors, and did not interfere with a defendant's ability to communicate with his attorney. During the hearing, Calhoon also testified. Calhoon testified that the mechanical leg restraint was pinching his ankle and causing him some pain.

The trial court granted the State's motion to have Calhoon restrained during trial. In its ruling, the trial court noted,

> Mr. Calhoon is being charged and the trial is relating to a charge of attempt to elude. While it's not a violent offense, it does speak to Mr. Calhoon's behavior as far as not complying with the directions of law enforcement. The testimony of the corrections officer is that Mr. Calhoon is oppositional in the jail. He has had that behavior since he has been placed in custody last fall, and that behavior has been ongoing including up to today where there was oppositional behavior and conversation by the defendant to the corrections officers.

I VRP at 61. The court also summarized its concerns regarding trial,

> Since the court has begun hearing this matter a little over an hour ago Mr. Calhoon has made it clear that he does not believe that the court should be addressing this case. He has made it clear that he's not in agreement with the authority of the court, and frankly given that the court is about to bring in approximately 40 members of the public in what I would describe as one of our smaller courtrooms, that causes the court concern for the safety and well-being of the public. It causes the court concern about maintaining decorum and an orderly process during the course of the trial.

I VRP at 61-62. The trial court also observed that the restraint had not been interfering with Calhoon's ability to communicate with his attorney. And the trial court ordered that the corrections officers adjust the restraint so that it was no longer causing Calhoon any pain.

## IV. TRIAL TESTIMONY

Trooper Ball was the primary witness in the State's case. Trooper Ball testified that on September 13, 2015, he was assigned to the field operations bureau which primarily enforces traffic laws and investigates traffic accidents. On September 13, Trooper Ball was driving a "non-normal-looking," pursuit-rated patrol car and was wearing a standard WSP summer uniform. I VRP at 143. Trooper Ball was also wearing a WSP hat and his badge. His vehicle was equipped with lights and sirens.

At approximately 8:30 AM, Trooper Ball was patrolling on the I-5 corridor in Thurston County. As he merged onto the highway, Trooper Ball observed a vehicle travelling approximately 80 miles per hour in an area where the speed limit was 60 miles per hour. Trooper Ball also noted that the vehicle had no rear license plate and was missing the driver's side mirror. Trooper Ball decided to stop the vehicle and activated the light bar on his patrol car. The vehicle began moving from the left lane across the highway toward the right lane.

Instead of pulling onto the right shoulder of the highway, the vehicle moved back into the left lane and then pulled onto the narrow left shoulder. Although the vehicle had pulled onto the shoulder, it did not come to a complete stop. Trooper Ball used the audio system in his vehicle to order the car to pull over to the right shoulder. The vehicle merged into traffic, crossed three lanes, and pulled onto the right shoulder. Trooper Ball pulled in behind the vehicle and ordered the driver to place the car in park. Instead, the vehicle pulled back into traffic. Trooper Ball testified that it

was very dangerous for the vehicle to pull quickly into traffic because it did not have a driver's side mirror.

The vehicle continued to accelerate and began driving erratically. After a short period, the vehicle pulled back onto the right shoulder and stopped. At this point, Trooper Ball had requested backup and a second trooper, Trooper Rosser, had arrived. Both troopers stopped with the vehicle. Trooper Ball stayed in his patrol car while Trooper Rosser attempted to contact the driver of the vehicle. The driver handed Trooper Rosser something through the passenger window of the vehicle and then drove off again. As the vehicle pulled into traffic, it cut off a pickup truck.

Trooper Ball continued to pursue the vehicle. He observed a white convertible yield by pulling onto the right shoulder. The vehicle being pursued had to slow down quickly and switch lanes in order to avoid a collision with the white convertible. Trooper Ball characterized the vehicle's driving as "[a]ggressive and dangerous." I VRP at 160. Finally, the vehicle pulled onto the right shoulder and stopped. Several WSP troopers pulled their vehicles around the vehicle to prevent it from fleeing again. The troopers gave the driver several commands to roll down the window and to exit the vehicle, but the driver failed to comply. Ultimately, the troopers broke the car window and removed the driver from the vehicle. Three troopers were required to remove the driver from the vehicle and handcuff him. After he was removed from the vehicle, the driver refused to identify himself to the troopers. At trial, Trooper Ball identified Calhoon as the driver of the vehicle.

In addition to Trooper Ball's testimony, the State introduced the video from Trooper Ball's patrol car. The State intended to play the video through Calhoon's arrest. Calhoon objected and argued that the video should be stopped as soon as the vehicle stops the final time. The trial court

7

found that "all of the behaviors point to evidence of flight, evidence that Mr. Calhoon has a belief that he is guilty and that he's fleeing in order to not respond to the law enforcement officers. That's part of the State's case." I VRP at 129. The trial court allowed the State to play the video through Calhoon's arrest.

The State also introduced photographs of Calhoon's vehicle, some of which showed Calhoon's vehicle without a rear license plate. And the State introduced a photograph of the bumper sticker Calhoon had on his vehicle that read,

> ! Stop Private Property!
> Please take note I do not consent to federal police enforcers, legal jargon
> Unlawful search and seizures
> Touching me or my property in any way.
> Fee schedule begins at 100,000.00

Ex. 7.

The jury found Calhoon guilty of attempting to elude a pursuing police vehicle. The trial court imposed a standard range sentence and mandatory legal financial obligations. Calhoon appeals.

ANALYSIS

I. RESTRAINT

Calhoon argues that the trial court erred by imposing physical restraints during trial. Calhoon asserts that the trial court abused its discretion because there were insufficient grounds for imposing physical restraints and the trial court did not consider less restrictive alternatives. We agree that there were not adequate grounds to support imposing physical restraints at trial, and therefore, the trial court abused its discretion. However, the trial court's error was harmless.

We review a trial court's decision to restrain a defendant for an abuse of discretion. *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001); *State v. Walker*, 185 Wn. App. 790, 799-800, 803, 344 P.3d 227 (2015). A trial court abuses its discretion when its decision is based on untenable grounds or for untenable reasons. *Walker*, 185 Wn. App. at 799-800.

A criminal defendant is entitled to appear free from restraints at trial except under extraordinary circumstances. *State v. E.J.Y.*, 113 Wn. App. 940, 951, 55 P.3d 673 (2002). "'Restraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in (sic) one's own behalf, and right to consult with counsel during trial.'" *Turner*, 143 Wn.2d at 725 (quoting *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981)). The trial court "'must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury.'" *E.J.Y.*, 113 Wn. App. at 951 (quoting *Hartzog*, 96 Wn.2d at 400). "'It is fundamental that a trial court is vested with the discretion to provide for courtroom security, in order to ensure the safety of court officers, parties, and the public.'" *Turner*, 143 Wn.2d at 725 (quoting *Hartzog*, 96 Wn.2d at 396).

Only after entering sufficient findings into the record may the trial court order the use of physical restraints during trial. *State v. Damon*, 144 Wn.2d 686, 691-92, 25 P.3d 418 (2001). "The trial court must base its decision to physically restrain a defendant on evidence which indicates that the defendant poses an imminent risk of escape, that the defendant intends to injure someone in the courtroom, or that the defendant cannot behave in an orderly manner while in the courtroom." *State v. Finch*, 137 Wn.2d 792, 850, 975 P.2d 967 (1999). And the trial court must consider less restrictive alternatives before imposing physical restraints. *Finch*, 137 Wn.2d at 850.

Here, the evidence does not support the trial court's decision to physically restrain Calhoon during trial. There was no evidence that Calhoon was an imminent escape risk or that he intended to injure any person in the courtroom. The trial court's decision was based primarily on Calhoon's verbal outbursts, failure to follow instructions, and general attitude towards the court's authority, but Calhoon did not engage in any physical conduct to support the trial court's decision. Physical restraints were not necessary to curb Calhoon's disruptive behavior because the physical restraints would not control Calhoon's verbal outbursts. Because there was insufficient evidence showing that physical restraint was necessary to prevent escape, injury to another person, or disorderly conduct, the trial court abused its discretion by imposing physical restraints during trial.

Although the trial court erred by abusing its discretion and imposing physical restraints during trial, the trial court's error was harmless. Improper shackling of a defendant is subject to a harmless error analysis. *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998). To demonstrate reversible error, the defendant is required to "show the shackling had a substantial or injurious effect or influence on the jury's verdict." *Hutchinson*, 135 Wn.2d at 888.

Here, Calhoon cannot show that the restraint had a substantial or injurious effect or influence on the jury's verdict because he cannot show that the mechanical leg restraint interfered with any of his rights. There was no substantial or injurious effect or influence on the jury's verdict because the trial court verified on the record that the mechanical leg restraint was not visible. The mechanical leg restraint also did not interfere with Calhoon's right to testify because he voluntarily chose not to testify and there was no indication in the record indicating that his decision not to testify was related to the mechanical leg restraint. And the mechanical leg restraint did not interfere with Calhoun's right to consult with counsel because the trial court verified on the record

that Calhoon was still able to communicate with counsel despite the mechanical leg restraint. Because there was no substantial or injurious effect or influence on the jury's verdict, the trial court's erroneous imposition of physical restraint during trial was harmless error.

## II. TIME FOR TRIAL

Calhoon argues that the trial court erred by granting the State's motion to continue based on the troopers' unavailability. We disagree.

A defendant held in custody pending trial must be tried within 60 days of arraignment. CrR 3.3(b)(1)(i). However, CrR 3.3(f)(2) allows the trial court to continue the trial date "when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." The decision to grant or deny a motion to continue lies within the sound discretion of the trial court and will not be disturbed absent a showing that it was manifestly unreasonable or based on untenable grounds or reasons. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009).

In granting a motion to continue the trial court must state on the record the reasons for granting the continuance. CrR 3.3(f)(2). The unavailability of a material State witness is a valid ground for continuing a criminal trial where a valid reason exists for the unavailability, the witness will become available within a reasonable time, and the defendant is not substantially prejudiced. *State v. Nguyen*, 68 Wn. App. 906, 914, 847 P.2d 936 (1993).

Here, the State's main witness was unavailable and there was a valid reason for the unavailability because Trooper Ball was scheduled to be in training. Trooper Ball was also able to become available in a reasonable time because the State was able to reschedule the trial and ensure Trooper Ball's availability within approximately one month of the original trial date. And

Calhoon was not substantially prejudiced because the short delay did not interfere with his ability to present a defense. Because a material State witness was unavailable for the original trial date and the trial court stated the witness's unavailability was the basis for granting the motion to continue, the trial court did not abuse its discretion by granting the State's motion to continue the trial date.

Calhoon cites to *City of Seattle v. Clewis* to argue that the trial court may only grant a continuance based on witness availability if the party has exercised due diligence in securing the witness's attendance. Br. of Appellant at 23; 159 Wn. App. 842, 247 P.3d 449 (2011). Then Calhoon argues that the State did not demonstrate it exercised due diligence in securing Trooper Ball's attendance. However, Calhoon's reliance on *Clewis* is misplaced.

In *Clewis*, the court stated that a continuance should be granted for a witness's absence only when the party seeking the continuance exercised due diligence to secure the witness's attendance. 159 Wn. App. at 847. But the court went on to explicitly state that "[d]ue diligence requires the proper issuance of subpoenas to essential witnesses." *Clewis*, 159 Wn. App. at 847. Here, Calhoon does not dispute that the State issued a subpoena to Trooper Ball. Therefore, the State exercised due diligence in attempting to secure Trooper Ball's attendance. Accordingly, Calhoon's due diligence argument fails.

The trial court did not abuse its discretion by granting the State's motion to continue because of Trooper Ball's prescheduled vacation. Accordingly, the trial court did not violate CrR 3.3 time for trial requirements.

## III. RES GESTAE EVIDENCE

Calhoon also argues that the trial court erred by admitting the evidence of his resisting arrest after the car was stopped and erred by admitting the photographs of Calhoon's car and the bumper sticker.[6] Calhoon characterizes the challenged evidence as "evidence of flight" and argues that, because there were numerous reasons why he would have refused to stop his car, the evidence of flight did not show consciousness of guilt of the crime charged. Br. of Appellant at 25-26. Calhoon also argues that the evidence was unfairly prejudicial because it showed Calhoon as "a criminal type person who flaunted his outlaw status and had no respect for laws or law enforcement." Br. of Appellant at 29. The State argues that the challenged evidence was not evidence of flight but rather res gestae evidence that was relevant and admissible to depict the complete story of the charged crime. We agree that the evidence showing Calhoon's arrest and the photographs of his car without a license plate, including photographs of his bumper sticker, were res gestae evidence and were not unfairly prejudicial. Therefore, the trial court did not abuse its discretion by admitting the challenged evidence.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Grier*, 168 Wn. App. 635, 644, 278 P.3d 225 (2012). The trial court abuses its discretion when it exercises its discretion on untenable grounds or for untenable reasons. *Grier*, 168 Wn. App. at 644. And we may affirm the trial court's rulings on any grounds supported by the record and the law. *Grier*, 168 Wn. App. at 644.

---

[6] Calhoon also makes a similar argument in his SAG. Calhoon's SAG argument will not be addressed separately.

Res gestae evidence is evidence that is relevant under ER 401 because the evidence completes the story of the crime on trial by proving the context of events near in time and place to the commission of the crime. *Grier*, 168 Wn. App. at 647. Res gestae evidence also allows the party presenting the evidence to depict a complete picture for the jury. *Grier*, 168 Wn. App. at 647. In contrast, evidence of flight may not be connected to the circumstances of the crime but is admissible because it creates an inference of consciousness of guilt of the crime charged. *State v. McDaniel*, 155 Wn. App. 829, 853-54, 230 P.3d 245 (2010).

Here, both the video of Calhoon's arrest and the photographs of Calhoon's vehicle were directly related to the events giving rise to Calhoon's attempting to elude. The series of events giving rise to the case began with Trooper Ball observing Calhoon's various traffic violations and ended with Calhoon's arrest. The photographs of Calhoon's car were directly related to why Trooper Ball decided to pull Calhoon over—driving without a license plate. Calhoon's arrest, and the video evidence of his resisting, was the direct continuation of Calhoon's refusal to comply with the officers' commands.

The bumper sticker that was on the car Calhoon was driving at the time that he was attempting to elude read:

> ! Stop Private Property!
> Please take note I do not consent to federal police enforcers, legal jargon
> Unlawful search and seizures
> Touching me or my property in any way.
> Fee schedule begins at 100,000.00

Ex. 7. The bumper sticker provides some insight into Calhoon's attitude toward law enforcement and, therefore, provides context and a possible explanation for Calhoon's conduct throughout the course of events leading to his arrest.

Because the challenged evidence was all directly related to the context of events near in time and place to the crime charged, the challenged evidence is properly characterized as res gestae evidence, not evidence of flight as Calhoon contends. Accordingly, the trial court did not abuse its discretion by admitting the video of Calhoon's arrest or the photographs of Calhoon's vehicle as res gestae evidence.

## IV. SELF-REPRESENTATION

Calhoon argues that the trial court denied him his Sixth Amendment right to represent himself by denying his motion to proceed pro se. We disagree.

Criminal defendants have an explicit right to self-representation under both the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. "This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). "The unjustified denial of this right requires reversal." *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997).

We review the trial court's decision denying a defendant's right to proceed pro se for an abuse of discretion. *Madsen*, 168 Wn.2d at 504. After a defendant has made a request to proceed pro se, the trial court must first determine whether the request is unequivocal and timely. *Madsen*, 168 Wn.2d at 504. If the defendant's request is unequivocal and timely, "the court must then determine if the defendant's request is voluntary, knowing, and intelligent, usually by colloquy." *Madsen*, 168 Wn.2d at 504. Courts are required to indulge in every reasonable presumption against a defendant's waiver of the right to counsel. *Madsen*, 168 Wn.2d at 504.

The trial court may not deny a motion to proceed pro se because the defendant lacks the skill and judgment to act as his own lawyer. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 669, 260 P.3d 874 (2011). However, a "searching inquiry into a defendant's mental health status is different from an inquiry into a defendant's skill and judgment to act as his own lawyer." *In re Rhome*, 172 Wn.2d at 669. Our Supreme Court has recognized that skill is not the same as capacity and "nothing precludes trial courts from inquiring further into a defendant's ability to waive counsel when mental health concerns are present." *In re Rhome*, 172 Wn.2d at 669. Even if a defendant is competent to stand trial, mental health concerns may limit the defendant's capacity to waive his right to counsel because,

> "if the court determines that [the defendant] does not have the requisite mental competency to intelligently waive the services of counsel nor adequate mental competency to act as his own counsel, then his right to a fair trial and his constitutional right to due process of law, is disregarded if the court permits him to so act in a criminal case."

*In re Rhome*, 172 Wn.2d at 661 (quoting *State v. Kolocotronis*, 73 Wn.2d 92, 99, 436 P.2d 774 (1968)). This allows the trial court to effectively protect countervailing constitutional rights apart from self-representation. *In re Rhome*, 172 Wn.2d at 669.

Here, the trial court did not abuse its discretion in denying Calhoon's motion to proceed pro se based on Calhoon's lack of capacity to waive his right to an attorney. Calhoon's beliefs about the legal system, including that it is still under the British Crown, marshal law, or the law of the sea, demonstrate that there were still mental health concerns that interfered with Calhoon's capacity to make an intelligent decision to represent himself at trial. Moreover, Calhoon's references to the rules of evidence and criminal procedure go beyond simply his lack of skill to act as an attorney. The record supports the trial court's determination that Calhoon lacked the capacity

to voluntarily, knowingly, and intelligently waive his right to an attorney.  Therefore, the trial court did not abuse its discretion in denying Calhoon's motion to proceed pro se.

## V.  SAG

### A.  CHARGING DOCUMENT

Calhoon claims that the State failed to file a "criminal complaint or criminal citation" within 48 hours of his arrest.  SAG at 2.  CrR 2.1(a) provides that "[t]he initial pleading by the State shall be an indictment or an information in all criminal proceedings filed by the prosecuting attorney."  Here, the State complied with CrR 2.1(a) by filing a criminal information charging Calhoon with attempting to elude a pursuing police vehicle.  And, the State filed the information within 48 hours because Calhoon was arrested on September 13, 2015 and the original information was filed on September 15, 2015.  Because the State filed a criminal information within 48 hours of Calhoon's arrest, Calhoon's claim fails.

### B.  SPEEDY ARRAIGNMENT

Calhoun claims that he was not timely arraigned.  CrR 4.1(a)(1) requires that a defendant detained in jail be arraigned "not later than 14 days after the date the information or indictment is filed."  If the defendant fails to object to the arraignment date at the time of the arraignment, he waives the right to object.  CrR 4.1(b).  Here, the State filed the criminal information on September 15, 2015 and Calhoon's arraignment was held on September 29, 2015—14 days after the information was filed.  Because Calhoon was arraigned within 14 days of the State filing the information, Calhoon's claim fails.

C.  FELONY CHARGE

Calhoon claims that there "was no just reason to go straight to felony charges for an elderly man with no criminal record, that was clearly in fear for his life."  SAG at 3.  Prosecutors are vested with great discretion in filing criminal charges.  *State v. Korum*, 157 Wn.2d 614, 625, 141 P.3d 13 (2006).  "'[A] prosecutorial action is 'vindictive' only if *designed* to penalize a defendant for invoking legally protected rights.'"  *Korum*, 157 Wn.2d at 627 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).  Here, Calhoon has not provided adequate information to inform us of the basis for the State's alleged vindictiveness.  RAP 10.10(c).  Accordingly, we do not have a basis for concluding that the State acted outside its broad discretion in charging Calhoon with a felony and Calhoon's claim fails.

D.  JURY INSTRUCTIONS

Calhoon claims that the prosecutor "was allowed to change the meaning and definitions of the charge [of] reckless driving as defined by statute in the instructions to the jury."  SAG at 4. We review alleged errors of law in jury instructions de novo and consider them in the context of the instructions as a whole.  *State v. Fehr*, 185 Wn. App. 505, 514, 341 P.3d 363 (2015).  It appears that Calhoon is referring to the distinction between the charge of reckless driving, RCW 46.61.500, and the element of driving in a reckless manner for the purpose of attempting to elude a pursuing police vehicle under RCW 46.61.024.

RCW 46.61.500 defines the offense of "reckless driving" as driving with "willful or wanton disregard for the safety of persons or property."  However, attempting to elude a pursuing police vehicle requires the State to prove that the defendant drove in a reckless manner and the statute does not require the defendant to have committed reckless driving.  RCW 46.61.024.  The term

"reckless manner" means to drive in a rash or heedless manner, indifferent to the consequences. *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005). The trial court's instructions to the jury stated:

> To operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences.

CP at 72. Because the trial court's instructions accurately reflect the definition of driving in a reckless manner, the trial court's instructions were proper. Accordingly, Calhoon's claim fails.

E. *BRADY* VIOLATIONS

Calhoon claims that the State committed a *Brady* violation by suppressing video evidence taken from Calhoon's vehicle. A *Brady* violation occurs when the prosecution suppresses evidence favorable to an accused where the evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). During motions in limine, the State made a record asserting that the camera found in Calhoon's car had been examined and there was nothing on the camera. Because the camera did not contain any recordings, the camera is not material evidence. Therefore, there was no *Brady* violation and Calhoon's claim fails.

F. IMPROPER CHARGING DOCUMENT

Calhoon claims that he was improperly charged as "a corporate thing as stylized on all the court dockets." SAG at 5. However, Calhoon offers no cognizable argument supporting this assertion or explaining how this allegation requires reversal of his conviction. Moreover, he offers no explanation of how the State charged him as a "corporate thing." Therefore, Calhoon has failed to adequately inform us of the nature and occurrence of his alleged error. RAP 10.10(c).

Accordingly, we will not consider Calhoon's argument that he was improperly charged as a corporate thing.

G.  INEFFECTIVE ASSISTANCE OF COUNSEL

Calhoon asserts that his appointed counsel admitted that he was ineffective as counsel in Calhoon's case.  Although Calhoon does not cite to the specific admission he refers to, it is likely he is referring to the following exchange during the hearing on Calhoun's motion to proceed pro se:

> [COURT]: And, [defense counsel], anything from you?
>
> [DEFENSE COUNSEL]:  Should the Court be inclined to grant Mr. Calhoon's motion [to proceed pro se], I would ask that I'm able to withdraw from this matter because our relationship, our communication has broken down to that point.

VRP (June 8, 2016) at 41.  However, almost immediately following defense counsel's comments the trial court made the following inquiry:

> [COURT]: [I]f the Court makes a decision to deny the motion, are you prepared to try this case on the 20th of June?
>
> [DEFENSE COUNSEL]: We're ready to go forward, yes.

VRP (June 8, 2016) at 42.

A defendant's Sixth Amendment right to counsel is violated if the relationship between attorney and client completely collapses and the trial court refuses to substitute new counsel.  *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 722, 16 P.3d 1 (2001).  But there is a difference between a complete collapse or irreconcilable differences and a "mere lack of accord."  *State v. Cross*, 156 Wn.2d 580, 606, 132 P.3d 80 (2006).  A complete collapse of the attorney and client relationship can exist when the defendant refuses to cooperate or communicate with his attorney

in any way. *In re Stenson*, 142 Wn.2d at 724. But a complete collapse can also exist when the communications are quarrelsome, derogatory, or threatening. *In re Stenson*, 142 Wn.2d at 724-25.

Here, there is nothing in the record that supports a complete collapse of the attorney and client relationship severe enough to demonstrate that Calhoon's right to counsel was violated because defense counsel represented that he was prepared to go to trial as appointed counsel if the court denied Calhoon's motion to proceed pro se. Moreover, because there are no details about the extent of the breakdown in communication, there is no basis for us to determine whether there was a complete collapse of the attorney and client relationship. Accordingly, Calhoon's claim fails because he has failed to demonstrate that he received ineffective assistance of counsel.

H. PROBABLE CAUSE

Calhoon also asserts that Trooper Ball did not have probable cause or authority to attempt to stop his vehicle. RCW 46.64.015 provides that an officer may detain a person to issue and serve a citation for traffic violations. RCW 46.16A.200(7)(d) states that it is unlawful to operate a motor vehicle without valid license plates. And RCW 46.37.400(1) requires that all vehicles be equipped with a mirror mounted on the left side of the vehicle.

Here, Trooper Ball had the authority to attempt to stop Calhoon's vehicle because Trooper Ball observed Calhoon's vehicle travelling approximately 20 miles an hour over the speed limit, without license plates, and without a mirror on the left side of the vehicle. Because Trooper Ball observed these traffic infractions, he had the authority to stop and detain Calhoon. Accordingly, Calhoon's claim that Trooper Ball did not have probable cause or authority to attempt to stop his vehicle fails.

I. SUFFICIENCY OF THE EVIDENCE

Calhoon makes several obscure claims that can be characterized as challenges to the sufficiency of the evidence supporting the jury's verdict for attempting to elude a pursuing police vehicle. First, Calhoon claims that Trooper Ball's car was not clearly marked as a WSP vehicle. Second, Calhoon asserts that Trooper Ball did not present an appropriate "certificate of authority." SAG at 3. Third, Calhoon asserts that Trooper Ball was acting unofficially.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence. *Salinas*, 119 Wn.2d at 201. All reasonable inferences must be drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. To prove attempting to elude a pursuing police vehicle, the State must prove that (1) the driver willfully failed or refused to immediately bring his or her vehicle to a stop, (2) the driver drove in a reckless manner, (3) the driver was given a visual or audible signal to stop, (4) the officer giving the signal to stop was in uniform, and (5) the officer's vehicle was equipped with lights and sirens. RCW. 46.61.024.

Calhoon's first claim addresses the requirement that the police officer's vehicle be equipped with lights and sirens. Although Calhoon claims that Trooper Ball's vehicle was not properly marked, the legislature only requires that the police vehicle be equipped with lights and sirens. Because Trooper Ball testified that his vehicle was equipped with lights and sirens, there was sufficient evidence to prove that the police vehicle was equipped with lights and sirens.

Calhoon's second and third claims address the requirement that the officer giving the signal to stop must be in uniform. Although Calhoon asserts that Trooper Ball did not have a "certificate of authority" and was acting unofficially, the statute requires only that the officer giving the signal to stop be in uniform. Because Trooper Ball testified that he was in uniform at the time he attempted to stop Calhoon's vehicle, the State presented sufficient evidence to prove that the officer giving the signal to stop was in uniform. Thus, Calhoun's claims fails.

The State also presented sufficient evidence to support the remaining elements of attempting to elude a pursuing police vehicle. First, the State presented sufficient evidence to prove that Calhoon willfully failed or refused to immediately bring his vehicle to a stop because Trooper Ball testified that Calhoon pulled his vehicle to the shoulder of the road several times and then pulled back into traffic. The State also presented the video from Trooper Ball's patrol car which showed Calhoon pull over to the shoulder of the road and then continue driving even after being repeatedly told to stop his vehicle and place it in park.

Second, the State presented sufficient evidence to prove that Calhoon drove in a reckless manner because Trooper Ball testified that Calhoon endangered other vehicles by repeatedly pulling to the shoulder of the road and then accelerating back into traffic. The State also presented the video from Trooper Ball's patrol car that showed at least one instance in which Calhoon almost hit another vehicle during the pursuit.

Third, the State presented sufficient evidence to prove that Calhoon was given a visual or audible signal to stop because Trooper Ball testified that he activated the lights and sirens of his patrol car when he attempted to stop Calhoon's vehicle. In addition, the video from Trooper Ball's

patrol car showed that Trooper Ball repeatedly told Calhoon to stop the vehicle and place the vehicle in park.

Thus, the State presented sufficient evidence supporting all the elements of attempting to elude a pursuing police vehicle. Accordingly, there was sufficient evidence to support the jury's verdict and Calhoon's claim fails.

We affirm Calhoon's conviction for attempting to elude a pursuing police vehicle.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, J.

Lee, A.C.J.